CITY OF CAMBRIDGE *vs.* CAMBRIDGE RAILROAD COMPANY & others.

MAYOR AND ALDERMEN OF THE CITY OF CAMBRIDGE *vs.* SAME.

A provision in the charter of a street railway company that, at any time after the expiration of ten years from the opening of any part of the road for use, a city may purchase of the corporation so much of the corporate property as lies within its own limits, at a specified price, does not give to the city any such interest or right as to enable it to maintain a bill in equity to restrain the corporation from raising passenger fares upon their road, in violation of conditions expressly assented to by the corporation, and imposed upon them by the mayor and aldermen of the city when granting to them the power to locate and build a new line of their railway through additional streets, if they are guilty of no fraudulent intent to destroy or depreciate the value of the corporate property although the value of their franchise and property will be thereby diminished, and the portion of their railway constructed under such authority will perhaps be exposed to forfeiture. Nor can the mayor and aldermen of the city maintain such bill.

Two BILLS IN EQUITY. The first alleged that by *St.* 1853, *c* 383, the Cambridge Railroad Company were incorporated, "with power to construct, maintain and use a railway or railways with convenient single or double tracks, from such point or points of the city of Cambridge, upon and over the streets or highways therein, as shall be from time to time fixed and determined by vote of the mayor and aldermen of the said city of Cambridge, and assented to in writing by the said corporation and over the roads, estates and bridges belonging to the Hancock Free Bridge Corporation to the intersection of the streets of Boston, as shall be from time to time fixed and determined by vote of the directors of the Hancock Free Bridge Corporation and assented to in writing by said corporation;" "provided however, that all tracks of said railroad shall be laid at such

distances from the sidewalks in said cities as the mayor and al‑
dermen thereof, respectively, shall in their orders fixing the routes
of said railroad determine to be for the public safety and con‑
venience; " " and said corporation to have the power to fix, from
time to time, such rates of compensation for transporting persons
and property as they may think expedient; " that in and by said
statute the corporation was to continue for fifty years; that it
was further therein provided that " the cities of Boston and Cam‑
bridge may, at any time during the continuance of the charter of
said corporation, and after the expiration of ten years from the
opening of any part of said road for use, purchase of said corpo‑
ration all the franchise, property, rights and furniture of said cor‑
poration by paying them therefor such a sum as will reimburse to
each person who may then be a stockholder therein the par value
of his stock, together with a net profit of ten per cent. per annum,
from the time of the transfer of said stock to him on the books
of the corporation, deducting the dividends received by said
stockholders thereon; " that by *St.* 1854, *c.* 205, it was provided
that " either of the cities of Boston and Cambridge, if it so elect
may purchase, on the same terms and conditions " above men‑
tioned " that part of the corporate property of this company
which relates or lies within its own limits, paying therefor a
proportional sum, to be ascertained by commissioners to be
appointed by the supreme judicial court; " and that " this act
shall be void and of no effect, unless the same shall be accepted
by the city council of the cities of Boston and Cambridge re‑
spectively, within one year; " that each of said acts was duly
accepted by the city council of Boston and Cambridge respec‑
tively, and by said corporation; that a route was thereafter only
fixed upon over certain streets in Cambridge, and accepted by
the corporation, and a railway constructed, opened and used
over the same; that the city have the right, after the expiration
of ten years from the opening of any part of said railway for
use, to make the purchase hereinbefore provided for; that said
ten years have not yet elapsed; that by the aforesaid statutes
and the acts of the parties under the same, a contract has been
created on the part of the corporation to sell to the city, according

to the provisions of the statutes, and the city has a vested right to purchase, the franchise and corporate property within the city of Cambridge, after the lapse of said ten years; that therefore the corporation are bound not to destroy or injure the same, or commit acts in the nature of waste thereof, or allow the same or any part thereof to be forfeited or destroyed; that in 1863 the corporation applied to the mayor and aldermen of Cambridge for leave to lay a track through additional streets of that city, praying that the location thereof might be accompanied with provisions that they should run a certain number of trips each day, and at fares not above a certain stipulated price; that the mayor and aldermen had power to fix and determine upon what agreements, provisions, terms or conditions the tracks of the railway should be laid over any streets of Cambridge, and that the same, when so fixed and determined, and when assented to by the corporation, became binding upon the corporation; that the mayor and aldermen accordingly accepted the proposal of the corporation, and fixed and determined that the corporation might construct, maintain and use a new track over certain additional streets, as prayed for, upon the terms and conditions proposed by the corporation, and the corporation assented thereto, and have accordingly laid, opened and used a new track over the same; that this new portion of said railroad is valuable and important to the city in case they shall elect to make the purchase provided for by the statutes; that to take up the same would be greatly injurious to the railroad as a whole; that the terms and conditions imposed by the mayor and aldermen are lawful and reasonable, and ought to be observed and kept; that the violation of them by the corporation will cause a forfeiture of the new portion of the railway; that the corporation have now raised the fares for passengers above the price stipulated for in the terms and conditions fixed by the mayor and aldermen and agreed to by the corporation, and intend and threaten to keep them at such increased rate; that these acts and doings are in violation of said conditions, and will, if persisted in, cause a forfeiture of the new portion of the railway, as aforesaid, and thus prevent the city from ever acquiring by purchase the right therein to which

it is entitled. The prayer was for an injunction to prevent the corporation from raising the fares or keeping them above the price stipulated as aforesaid, and for further relief.

The second bill was brought by the mayor and aldermen of the city of Cambridge, and set forth substantially the same facts as the first bill, and sought for the same relief.

The defendants filed a general demurrer, and the cases were reserved by *Gray,* J. for the determination of the whole court.

*H. W. Paine & G. G. Hubbard,* for the defendants. The two bills ask the same relief. The bill brought by the city is on the ground that the corporation are proceeding improvidently, and exposing the franchise and property to forfeiture. The other is on the ground of a contract. 1. A non-compliance with the conditions is no cause of forfeiture. The mayor and aldermen had no power to impose such conditions. The statutes give no such power. The mayor and aldermen were not representatives of the city. The powers intrusted to them might as well have been vested in somebody else. Nor do the conditions derive any additional validity from the assent of the corporation. The corporation, by their charter, must fix the rates of fare, and cannot divest themselves of this duty. *Clay* v. *Rufford,* 5 De G. & Sm. 768. *Presbyterian Church* v. *New York,* 5 Cow. 538. *Coates* v. *New York,* 7 Cow. 585. *Goszler* v. *Georgetown,* 6 Wheat. 593. The rate of fares should vary. What is a reasonable price now will be too high when we return to a specie basis. 2. The city has no such interest as to entitle it to ask the relief sought for. It has no interest in the railway. It must first elect to purchase. There is no averment of fraud on the part of the corporation. If the right to an injunction exists in this case, it would also exist to restrain any improvident management. It would amount to this, that the corporation must operate their road under the direction of this court. Even assuming it to be a contract, the case is not altered. The probability of a future title is not sufficient. 3. This was certainly not a contract with the mayor and aldermen. They are not competent to be a party to such an agreement. They have no more interest than any citizen. 4. There was no consideration for such a contract. If the

public interests required the location of new tracks, it was the duty of the mayor and aldermen to grant such location without any consideration. *Commonwealth* v. *Cambridge*, 7 Mass. 158. *Commonwealth* v. *Sawin*, 2 Pick. 547. *Dudley* v. *Cilley*, 5 N. H. 558.

*C. T. Russell*, (*J. A. Jacobs* with him,) for the plaintiffs. 1. By the various acts referred to, a contract was created between the corporation and the city, which the city may enforce. *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 344. The corporation also took their charter under a specific trust, in favor of the city. The city has the vested right to make the purchase provided for. This is equivalent to a grant to the city of a valuable franchise. Such grant is constitutional and proper. *West River Bridge* v. *Dix*, 6 How. 507. *Boston Water Power Co.* v. *Boston & Worcester Railroad*, 23 Pick. 360. This franchise or right of the city is entitled to the protection of the court. There is no distinction, in this respect, between a franchise in actual exercise and one which a party is entitled to come into the exercise of. 'Most suits to stay waste are brought by parties having absolute or contingent rights to the future possession. This right of the city is valuable. It may be protected by a court of equity. The fact that it is uncertain whether the city will ever make the purchase is no reason for refusing relief. *Robinson* v. *Litton*, 3 Atk. 209. *Garth* v. *Cotton*, 1 Dickens, 183, 204. *Taylor* v. *Robinson*, 7 Allen, 253.

2. The conditions fixed by the mayor and aldermen were valid. The statutes vested in them the power to make such conditions. And it is entirely within the corporate powers of the company to accept such conditional license to occupy the streets. *Ludlow* v. *New York, &c. Railroad*, 12 Barb. 440. *Underhill* v. *Saratoga, &c. Railroad*, 20 Barb. 455. *Rathbone* v. *Tioga Navigation Co.* 2 Watts & S. 74. The mayor and aldermen acted as agents of the city, intrusted with the care of public streets. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 430, 431. Such permission or grant by the mayor and aldermen is an irrevocable license, or contract with the corporation. *Attorney General* v. *Mayor, &c. of New York*, 3 Duer R. 119. *Davis*

v. *Mayor, &c. of New York*, 4 Kernan, 506. Their authority in Massachusetts is derived from statute, and may be exercised absolutely or conditionally. See *Day* v. *Green*, 4 Cush. 433. *Boston* v. *Schaffer*, 9 Pick. 415. *Drake* v. *Hudson River Railroad*, 7 Barb. 508. *Milhau* v. *Sharp*, 15 Barb. 210, 218, 232; *S. C.* 17 Barb. 435. *Williams* v. *New York Central Railroad*, 18 Barb. 222. Besides, this power has been recognized by the legislature. *St.* 1864, *c.* 229, §§ 26, 45.

3. These conditions have been violated; and the consequence is the same as if the license had been revoked. The railway becomes an unlegalized obstruction in the streets; the company have no right to maintain it; it becomes a nuisance in law. *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63. *Day* v. *Green*, Ib. 433. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 424, 428. *Commonwealth* v. *King*, 13 Met. 115. *Commonwealth* v. *Nashua & Lowell Railroad*, 2 Gray, 54. *Commonwealth* v. *New Bedford Bridge*, Ib. 339, 345. *Commonwealth* v. *Vermont & Mass. Railroad*, 4 Gray, 22.

4. This is an injury to the city. They have the right to purchase the railway on certain terms. This right is injured by the acts complained of. The franchise of the city to take the railway is as much entitled to protection as the franchise of a railroad corporation to have other railroads excluded from certain limits. *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1. *Boston Water Power Co.* v. *Boston & Worcester Railroad*, 16 Pick. 521, *et seq.*

Bigelow, C. J. We think it very clear that neither of these bills can be maintained:

1. First as to that instituted by the city of Cambridge. By the terms of the acts incorporating the defendants, *St.* 1853, *c.* 383, and *St.* 1854, *c.* 205, it is manifest that the care and management of all the business and prudential affairs appertaining to the roads belonging to the defendants are intrusted by the legislature exclusively to the corporation. After the location of the road is completed, according to the provisions of these statutes, it is the province and duty of the corporation to con‑struct and maintain the road, to continue the use of so much of

it as they may deem expedient, prescribe the rate of fares, and direct the mode of using the road by the public, subject only to such regulations as the mayor and aldermen of the cities in which the road is located may make concerning the rate of speed and the manner of using the tracks. This delegation of power to the corporation over the management of the road is full and complete, without restriction or limitation, and it cannot be interfered with so long as it is exercised in good faith. The city of Cambridge has no right or interest in the road or its management, other than or different from that which belongs to any other municipal corporation in the Commonwealth, except that which may exist or accrue by reason of the provisions contained in § 7 of the original charter of the corporation, *St.* 1853, *c.* 383, by which the right is granted to the cities of Boston and Cambridge of purchasing the franchise and property of the corporation on certain prescribed terms at any time during the continuance of the charter, and after the expiration of ten years from the opening of any part of the road for use. But this right of preëmption, even if it be conceded to be in the nature of a contract, confers no right or power on the city to interfere with or control the administration of the affairs of the corporation by its directors or other officers, so long as they are conducted in good faith, and no fraud or unfair dealing in the management of the road or its business is alleged. More especially is this so during the period which must elapse before the time shall have expired when the right of purchase will accrue to the city, and while they can set forth only a probability of acquiring a future title to the road and franchise, contingent on the election of the city to exercise the right of purchase, an event which may never happen. The allegations in the bill go no further than to aver indiscreet and improvident management by the corporation, by which a portion of the road, as already located, will be discontinued, and the right to maintain it forfeited and lost, whereby great pecuniary loss may be occasioned to the corporation, and the contingent right of purchase by the city may be injuriously affected and its value impaired. But these allegations amount to nothing more than an averment that the affairs of the

Cambridge *v.* Cambridge Railroad Company & others.

corporation are not wisely and discreetly conducted.  The same result would follow if the corporation should purchase horses and grain at prices which the plaintiffs should allege to be exorbitant or excessive, or should manage any other branch of their business in a manner which might be deemed to be imprudent or careless.  Such matters are by law intrusted to the corporation, and their doings cannot be revised or regulated, or in any way interfered with, so long as they act fairly and without fraud Putting aside all other objections to the maintenance of the bill, we are therefore of opinion that the city show no such right or interest as to authorize them to call in the aid of a court of equity to restrain the defendants from the exercise of the powers conferred on them by law.

2. It is equally clear that the allegations in the bill brought by the mayor and aldermen of Cambridge show no right in them to equitable relief.  We are unable to see any plausible ground on which they can be held to be proper parties to any suit against the defendants, either for an infringement of the provisions of their charter or of a want of fidelity and due care in the management of the business and affairs of the corporation, or for a breach of any alleged contract or agreement into which they have entered. , Certainly no right or authority to exercise any supervision or control over the defendants, or to require them to conduct the operations of their road in any manner other than is deemed expedient or proper by the defendants, or to enforce any supposed agreement or condition, is vested in the mayor and aldermen, under the general powers and duties devolved on them by law, as officers acting for the city.  Nor is there any such right or authority vested in them by the acts incorporating the defendants.  So far as they are intrusted with any power in relation to the location and construction of the road, and other matters connected with its use, these duties are specifically enumerated and defined, and they are to be performed by them, not as officers acting for or representing the city, but as a body of men on whom certain duties of a ministerial or *quasi* judicia. nature are by law devolved.  These duties have no necessary or essential connection with those which they are

called on to perform in their official capacity, as a branch of the city government. They might have been imposed as well on any other body of men, if the legislature had seen fit, although it was doubtless wise as a matter of convenience and expediency that they should be performed by those who, in their official connection with the city, would be more likely to discharge them without difficulty and to the advantage of the public. But we look in vain for any provision of law which authorizes them to act in behalf of the city, either in making any contracts with the defendants, or in enforcing, in their names or in their official capacity, any contract created by law, with the city or the public, under the acts incorporating the defendants. If the conditions on which the location of the road or any part of it was granted to the defendants can be properly regarded as a contract — a point not necessary now to determine — it was not one to which the mayor and aldermen were a party, or which they are capable of enforcing. They were merely agents in prescribing the terms of such location, with specific and limited powers, and possessing no power or authority beyond those enumerated, among which is not included that of maintaining an action to compel the defendants to comply either with the terms of their charter or the conditions on which they were permitted to construct their tracks through the streets of a city. A remedy for any such violations of contracts or duty by the defendants cannot be sought by these plaintiffs.

The provisions of *St.* 1864, *c.* 229, §§ 26, 45, confer no power on the mayor and aldermen to maintain this bill.

Upon these grounds, without meaning to be understood that there are not other valid objections to the maintenance of these suits, we are of opinion that a decree must be entered sustaining the demurrer and dismissing these bills.

*Bills dismissed.*